# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

―――――――――
## NO. 03-10-00455-CV
―――――――――


**John Stritzinger, Appellant**

**v.**

**Katherine Wright, Appellee**


―――――――――
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. D-1-FM-04-004690, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**
―――――――――


## M E M O R A N D U M   O P I N I O N


John Stritzinger appeals a final district court order[1] modifying the child-custody provisions of his divorce decree to appoint his ex-wife, appellee Katherine Wright, sole managing conservator of their children. Stritzinger asserts that the district court committed procedural and evidentiary errors impacting trial of the modification issue and abused its discretion in naming Wright sole managing conservator. Stritzinger also complains of other provisions of the order that increased his monthly child-support obligation, required him to pay certain insurance and medical

―――――――――

[1] The final order on appeal consists of a January 6, 2010 order and a January 20, 2010 addendum. Stritzinger filed separate notices of appeal from each order. We subsequently consolidated the two appeals into this cause.

Additionally, Stritzinger filed a total of four other appeals challenging various subsequent orders in the underlying cause, including contempt orders and discovery rulings. All of these appeals have since been dismissed either for want of subject-matter jurisdiction or on Stritzinger's own motion.

expenses as additional child support, granted a motion for enforcement filed by Wright and denied one he had filed, awarded attorney's fees to Wright, and imposed sanctions and other punitive relief against him.[2] We will affirm the district court's judgment.

## MODIFICATION OF CONSERVATORSHIP

The present conservatorship dispute is the latest of several that have arisen since Stritzinger and Wright divorced in 2005. There were three children of the marriage, H.S., J.S., and L.S. When the divorce became final, H.S. was six, J.S. was four, and L.S. was two. By this time, concerns had arisen that H.S. might have some learning disabilities.

In an agreed final divorce decree, signed on May 5, 2005, the district court had appointed Stritzinger and Wright joint managing conservators of the children. The decree provided that each parent had the right to make educational decisions for the children, subject to the other parent's agreement and to conditions set out in an "Orders Regarding Educational Testing, Educational Consultant, Decisions and Expenses" section of the decree. In these provisions, the parties agreed upon the appointment of Dr. Nancy Nussbaum to conduct an evaluation of and educational testing on H.S. to determine whether she had any learning disabilities or special educational needs and that Nussbaum would provide the results to them and to Roberta Rosen, who was appointed as an educational consultant for all three children. The parties agreed that Rosen

---

[2] We have attempted to construe the substance of Stritzinger's briefing (which includes two opening briefs and numerous amendments and modifications, all pro se) as best we can. To the extent that Stritzinger purports to raise additional complaints, we hold they are waived. Tex. R. App. P. 38.1; *see Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978) (pro se litigants must be held to the same standards as parties represented by counsel to avoid giving them an unfair advantage).

would use the test results to assess H.S.'s educational needs and recommend a school or schools most able to accommodate H.S.'s needs. They also agreed that Rosen would recommend school placement for J.S. and L.S. based on her assessment of the best educational program available to meet each child's needs. Stritzinger and Wright were ordered to follow Rosen's recommendation if they were unable to agree on a school or schools for one or more of the children. The decree provided that Rosen would immediately begin working to determine appropriate schools for H.S. and J.S. for the school year beginning in fall 2005. They also agreed that L.S. would remain in her current preschool until the spring of 2006.

The parties also agreed in the decree that Dr. Susan McMillan—a child psychologist who evidently had been providing services to the children—would remain the children's therapist, and that neither parent would take the children to see or be evaluated by any other mental health professional unless specifically referred by McMillan. Both parties were also required to consult with McMillan regarding any recommendations she had for counseling and other therapy for the children and to make themselves and the children available for appointments with her. The court also designated McMillan as the parties' parenting communication facilitator and ordered them to attend joint sessions with her on at least a quarterly basis.

After testing, H.S. was diagnosed with specific language impairment ("SLI"), a condition characterized by difficulty with oral language expression.[3] In 2006, Wright moved to modify the decree, asserting that the severity of H.S.'s language processing issues had become

---

[3] As one of the testifying experts explained, SLI and dyslexia are part of a continuum of language difficulties experienced by some people: "[T]here are aspects of SLI that can impact the ability to read. . . . SLI requires additional criteria for diagnosis as dyslexia."

clearer, but that Rosen's school recommendation for H.S. was inconsistent with her diagnosis. The parties were also aware by now that H.S.'s condition might be genetic and affect her siblings. A professional assessment had been recommended for J.S., and Wright complained that Rosen had recommended a school for him without requesting a professional assessment. Wright sought to keep H.S. and J.S. at their current school, the Austin Waldorf School, and that L.S. be directed to attend the Waldorf School, too.

After a July 2006 hearing, the district court, the Honorable John Dietz presiding, modified the decree. The court removed Rosen as educational consultant. The court further ordered that H.S. attend the Rawson-Saunders School, which specializes in teaching students with dyslexia and other learning disabilities, and that J.S. and L.S. attend the Waldorf School. The court ordered that Dr. Linda Swank, H.S.'s speech language pathologist, would perform a speech and language evaluation on J.S. in January 2007 and that H.S. would continue to receive private speech therapy from Swank. Both parents were enjoined from retaining any new therapists, counselors, consultants, or forensic experts except by agreement or court order. In the order, Judge Dietz retained the case on his docket and ordered the parties to begin attending quarterly status conferences with him. McMillan, Swank, and Pat Sekel, the director of the Rawson-Saunders School, were ordered to provide monthly written status reports about H.S.'s progress to Judge Dietz and the parties. Stritzinger and Wright were also instructed that they were to cooperate with and not interfere with McMillan's, Swank's, or Sekel's recommendations or treatment of the children.

In March 2007, Wright again moved to modify the parent-child relationship and to enforce the agreed final divorce decree, alleging that Stritzinger was harassing Swank. Judge Dietz

4

sent the parties to joint counseling with Dr. Caryl Dalton to resolve Stritzinger's opposition to private speech therapy for J.S. In May 2007, the parties and Dalton entered into a rule 11 agreement in which they agreed that J.S. would stop speech therapy at the end of the month. They also agreed that if J.S.'s teacher at any time recommended that he needed additional help outside of the Waldorf School, they would seek a recommendation from McMillan for a professional that neither party had previously consulted. If McMillan did not wish to make a referral, they agreed to accept a referral from J.S.'s teacher. In a November 2007 agreed order, Judge Dietz ordered that H.S. would remain at the Rawson-Saunders School and J.S. and L.S. would remain at the Waldorf School. The order enjoined the parties from filing a motion to modify for reasons related to whether Rawson-Saunders School was a proper school for H.S. until after the end of her third-grade year. It also enjoined them from moving to modify for reasons related to whether Waldorf was a proper school for J.S. and L.S. until after the end of J.S.'s fifth-grade school year and L.S.'s third-grade school year, regardless of any test results. Before signing this order, Judge Dietz notified the parties that he would be recusing himself from the case and returning it to the central docket, expressing the view that his attempts to help the parties develop a working parenting relationship had failed. Accordingly, the November 2007 agreed order eliminated the provision from the 2006 order requiring monthly status reports from McMillan, Swank, and Sekel and monthly status conferences attended by the parties. The order also provided that Swank would no longer be H.S.'s speech and language therapist and McMillan would select a new one, subject to certain conditions. H.S.'s new therapist could also provide speech and language therapy for J.S., if the therapist believed therapy

was warranted based on a review of J.S.'s prior evaluations, but the May 2007 rule 11 agreement's provision precluding additional testing unless recommended by J.S.'s teacher remained in place.

In April 2009, the Rawson-Saunders School notified the parties that H.S. had completed her goals there and was ready to return to the Waldorf School. Stritzinger, however, maintained that H.S. should remain at Rawson-Saunders, contrary to the school's recommendation. In response, Wright filed the proceeding that is the subject of this appeal. Wright sought to modify the joint managing conservatorship to be appointed sole managing conservator, to increase Stritzinger's child-support payments to include above-guideline support for the children's additional needs, to modify Stritzinger's possession of and access to the children, and to have H.S. returned to the Waldorf School (by now, she was at the end of her third-grade year). Additionally, Wright moved to enforce the terms of the divorce decree and subsequent modifications, which she alleged Stritzinger had violated in numerous ways.

The primary reason that Wright asserted for seeking sole conservatorship was an alleged change in the parties' ability to co-parent. Wright alleged that Stritzinger had become intransigent in his refusal to cooperate with her in making joint medical, dental, therapy, educational, or extracurricular decisions for the children. Instead of cooperating, she alleged, he challenged virtually any decision she made concerning the children. In addition, Wright asserted that H.S.'s educational needs had changed since the last court order establishing the schools to be attended by the children (the November 2007 agreed order).

Stritzinger filed a counterpetition to modify and motion for enforcement, seeking among other things, to be granted the sole right to determine the children's educational needs after

consultation with certain professionals. Stritzinger agreed with Wright that there had been a material and substantial change in circumstances since the last order, but he denied that circumstances had changed in a manner that required the modification sought by Wright. Instead, he alleged that the change in circumstances supported only the following changes in the terms of the conservatorship: (1) the appointment of Nussbaum's office to perform an annual neuropyschological screening of the children and to recommend additional specialists and treatment based on her diagnostic testing, (2) the grant to him of the sole right to determine the children's educational needs after consultation with Nussbaum and Dalton, and (3) the appointment of Dalton as the parent facilitator and removal of McMillan from that position. Stritzinger further asserted that although he did not believe that grounds existed for changing from a joint managing conservatorship to a sole managing conservatorship, he urged that he should be granted sole conservatorship if the court disagreed.

The district court modified the joint managing conservatorship provision, appointing Wright as sole managing conservator and Stritzinger as possessory conservator. It found in part that Stritzinger and Wright had been unable to make joint medical, dental, therapy, educational, or extracurricular decisions for the children because of continuing conflict and discord between them. It further found that appointing Stritzinger and Wright as joint managing conservators would not be in the best interest of the children because it would significantly impair the children's emotional development and physical health and that appointing Stritzinger as a joint managing conservator would not benefit the children in view of his lack of cooperative decision-making for them.

On appeal, Stritzinger primarily complains that the district court abused its discretion by appointing Wright. He contends that the evidence shows that Wright had made prior educational

choices for the children that had harmful effects on them and resulted in their receiving educations that were inappropriate for each of their particular capabilities. He argues that the court should have based its conservancy decision solely on the educational needs issue. Stritzinger asks this Court to order that the children: (1) be evaluated by a school district and that the school district develop for each child "an individualized education program" ("IEP"), as provided by the Individuals with Disabilities Education Act, 20 U.S.C.A. § 1400 *et seq.* (West 2010); and (2) attend Lake Travis Independent School District, or alternatively, allow Stritzinger to present "appropriate private educational options to the Court which meet or exceed the State and Federal Standards."

The Texas Family Code allows a trial court to modify an order concerning conservatorship "if modification would be in the best interest of the child" and "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since . . . the date of the rendition of the order . . . ." Tex. Fam. Code Ann. § 156.101 (West Supp. 2010). The party seeking modification has the burden to establish these elements by a preponderance of the evidence. *Zeifman v. Michels*, 212 S.W.3d 582, 589 (Tex. App.—Austin 2006, pet. denied). The court's primary consideration is the best interest of the child when determining the issues of conservatorship. *See* Tex. Fam. Code Ann. § 153.002 (West 2008); *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.—Austin 2003, no pet.); *see also Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976) (identifying non-exhaustive list of factors that courts may consider in determining best interest); *Zeifman*, 212 S.W.3d at 595 (applying factors in a conservatorship-modification case). Trial courts have wide latitude to determine what is in a child's best interest. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). A trial court's order

8

modifying a joint managing conservatorship will not be disturbed on appeal unless a clear abuse of discretion appears from the record as a whole. *Id.*; *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.).

A trial court abuses its discretion only if it acts in an arbitrary and unreasonable manner or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). An abuse of discretion does not occur merely because the trial court decides a matter within its discretionary authority in a different manner from an appellate court in a similar circumstance. *Id.* at 242; *Echols*, 85 S.W.3d at 477. In particular, the question of conservatorship of a child is left to the trial court's discretion because it is in the best position to observe the witnesses' demeanor and personalities and can "'feel the forces, powers, and influences that cannot be discerned by merely reading the record.'" *Echols*, 85 S.W.3d at 477 (quoting *Jeffers v. Wallace*, 615 S.W.2d 252, 253 (Tex. Civ. App.—Dallas 1981, no writ)). Thus, no abuse of discretion occurs as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Id.*

In this analytical framework, the legal and factual sufficiency of the evidence supporting the trial court's ruling are not independent grounds of error but go to whether the court abused its discretion. *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no pet.). We engage in a two-pronged inquiry, determining whether (1) the trial court had sufficient evidence upon which to exercise its discretion, and (2) the trial court erred in its application of that discretion. *Zeifman*, 212 S.W.3d at 588. We apply traditional sufficiency review when considering the first

9

question,[4] and then we consider whether the trial court made a decision, based on the evidence, that was not arbitrary or unreasonable. *Id.* In substance, Stritzinger raises challenges under both prongs of the inquiry.

Over the course of the five-day bench trial, the district court heard considerable evidence concerning the children's educational needs and histories and the parties' increasing difficulties in co-parenting. Wright testified that Stritzinger challenged basic decisions regarding the children's care[5] and about negative effects of the conflict between her and Stritzinger on the

---

[4] When conducting a legal-sufficiency review, we must view the evidence in the light most favorable to the trial court's findings, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). Moreover, we must indulge every reasonable inference that would support the trial court's findings. *Id.* at 822. The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *See id.* at 827. When reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence in the record, and we should set aside the finding only if the evidence supporting the finding is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). We must not merely substitute our judgment for that of the factfinder. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

[5] Wright testified that Stritzinger had filed motions for contempt of court against her for such things as seeking dental treatment for J.S.; following the children's pediatrician's recommendation and having J.S. and L.S. tested for allergies by a board-certified allergist; engaging Karen Montieth, an academic language therapist, to provide reading tutoring for J.S. based on his teacher's recommendation; and taking L.S. to occupational therapy based on her teacher's recommendation. According to Wright, Stritzinger never offered her an alternative suggestion for the children's medical, dental, or other therapeutic providers when he disagreed with her choices. There was also evidence that in 2007 Stritzinger accosted Dr. Swank, H.S.'s speech therapist, while Swank was treating other children, resulting in her sending a letter to the court seeking "relief from his continual emailing, phone calls, and unannounced intrusions." Swank eventually refused to continue treating the children. Stritzinger and Wright also disagreed about decisions for the children's extracurricular activities. Wright testified that in the past two years, Stritzinger had not agreed with her about any medical, dental, therapy, or educational decision for the children, except for the November 2007 agreed order in which they agreed to keep J.S. and L.S. at Austin Waldorf School until at least the end of J.S.'s fifth-grade year and L.S.'s third-grade year and to keep H.S. at Rawson-Saunders School until at least the end of her third-grade year. But at the end of H.S.'s third-grade year,

children. Wright also presented a number of expert witnesses who testified about the children's educational needs and histories, the effect of the parental conflict on the children, and the parties' inability to co-parent. Her witnesses included Dr. Stephen Thorne, a clinical psychologist, who conducted a court-ordered evaluation of Stritzinger and a voluntary evaluation of Wright; Dr. Reid Lyon, an expert on learning disorders and neuropsychology, who reviewed and synthesized all the available data on the three children and provided his opinion on each child's characteristics from a social, emotional, and academic perspective, each child's educational experiences, and each child's academic needs;[6] and Dr. Susan McMillan, the children's court-appointed psychologist.

Lyon and McMillan both testified about H.S.'s changed educational needs and the Rawson-Saunders School's assessment that H.S. was ready to return to the Waldorf School. Dr. McMillan testified that she did not believe that H.S. was "impaired" in any way and that it was important for H.S. (who was ten years old at the time of trial) to have some input into the decision about her school placement for the upcoming year. After reviewing all the data related to H.S. and consulting with her teachers, Lyon concluded that the school's recommendation that H.S. return to Waldorf was appropriate because H.S. was academically capable of returning and she was motivated to make the transition. J.S. had been diagnosed with dyslexia about a month before trial, and both Lyon and McMillan also testified about his educational placement. McMillan testified that if J.S. was required to change schools, "he would be emotionally devastated," and that he has already been

Stritzinger refused to attend a conference with the children's psychologist, Dr. McMillan, to discuss H.S.'s educational status and school for the following year.

[6] Dr. Lyon also created a transition plan for H.S. in collaboration with the Rawson-Saunders and Waldorf Schools and worked with the staff at the Waldorf School to create progress monitoring plans for J.S. and L.S. to insure that the children would succeed academically.

seriously hurt by the parental conflict in the family. Lyon stated his general opinion that "[s]chool transfer, school change can be extremely stressful" for a child. Regarding J.S.'s school placement, in particular, Lyon testified that Wright had acted in J.S.'s best interest by exploring options for him that would allow him to stay at his current school "where he is comfortable, where he has his peer group, where he is provided the attention that he needs." He further opined that "the combination of the specialist working on the reading problems in combination with the classroom teacher [at Waldorf] in a sense represents the best of both worlds."

All three of Wright's experts testified about the parties' inability to co-parent and the effect of the parental conflict on the children. Thorne opined that Stritzinger has certain personality traits that could affect his ability to co-parent.[7] Thorne also testified to his related concern about the extent of the parties' legal conflict over the past few years and his opinion that much of Stritzinger's "filings/accusations/motions in the current conflict are, more than anything else, serving to prolong the 'war' between him and [Wright]." Thorne also stated that although he believed Stritzinger felt justified in his actions, "some of the concerns/accusations expressed by Mr. Stritzinger appear to not only be questionable in merit, but also in direct contrast to his likely goals of doing what is best for his children." Thorne testified to his opinion about the likelihood that the parties would be able to co-parent effectively: "I don't think that there's any possible way that will happen, even with therapy. That's just as honest, as blunt as I can state it. They have been in therapy at different times. . . . [T]herapy hasn't shown to be able to get them to agree on some very simple things, some

---

[7] These traits include, among others: "overly simplistic, 'black-and-white' thinking"; a preoccupation with data; and a tendency to ignore data that does not support his position, while "cherry picking" data that he believes supports his position.

12

more complex things." McMillan agreed with Thorne that at times Stritzinger appears rational, but then acts irrationally. She testified that she would have no concerns about Wright's being appointed the primary caregiver, but she would have some about Stritzinger as primary caregiver. McMillan also agreed with Thorne that co-parenting was not working for the parties because they could not reach agreement about anything, and the conflict was harming the children. She did not believe that resolving the educational issues would resolve the other matters because the parties were constantly sending her emails about their disagreements over medical decisions. And Lyon testified that "continued [parental] discord, without resolution, is extremely dangerous for the youngsters' well-being socially, emotionally, and academically" and could negatively affect the children's academic performance and test results.

Stritzinger, in addition to testifying on his own behalf, called the following witnesses who testified primarily about J.S.'s and L.S.'s educational needs and status: Bridgette Mouton, L.S.'s Waldorf kindergarten teacher for two years before trial; Julie Niedert, the children's speech therapist at the time of trial; and Karen Montieth, J.S.'s academic language therapist ("ALT"), who had tutored him in reading at Waldorf four times a week between February and May 2009.[8] Stritzinger argued at trial and continues to argue on appeal that keeping J.S. and L.S. at Waldorf is not in their best interest because J.S. is behind grade level in his reading capabilities and L.S. is at risk for falling behind. Stritzinger testified to his perception that J.S. needed "dramatic intervention" because he had now been diagnosed with dyslexia and he should be sent to Rawson-

---

[8] Wright had hired Montieth based upon J.S.'s classroom teacher's recommendation with approval from McMillan.

Saunders School. Stritzinger also testified to his belief that L.S. was at risk for learning disabilities similar to those her siblings had and that Rawson-Saunders would be a good place to resolve any issues she might have.

None of Stritzinger's witnesses corroborated his assertions. Mouton testified that L.S. had done very well in the classroom and had made good progress in improving her attention span. She testified that the Waldorf School's movement-based curriculum is particularly good for children like L.S. who need help focusing, and that she believed that the transition plan proposed for L.S., which provided for L.S. to be evaluated by the on-site academic language therapist early in first grade, was a good proposal. Mouton also testified to her concern "after having seen what the children have gone through over the last few years . . . this isn't a very healthy situation for the children." Niedert, a speech therapist recommended by Dr. McMillan, had begun seeing H.S. and J.S. in February 2008, and had evaluated L.S. She testified that she was not recommending therapy for L.S. at the time, but that L.S.'s phonological awareness should be closely monitored. Niedert testified that although J.S. was still significantly behind grade level in his reading, he had made considerable progress after being tutored over the summer. She testified that if J.S. continued having sessions with the ALT at school, he would continue responding favorably. Montieth, J.S.'s ALT, testified about her assessment of J.S.'s reading skills at the time she had last seen him. She testified that while it was prudent and reasonable for Wright to have arranged for tutoring based on J.S.'s teacher's recommendation at the end of January 2009 because he needed help with his reading, she would recommend against J.S.'s being transferred to a different school at this point because of the stress she had seen him exhibit at times as a result of the parental conflict and because she expected

14

him to continue responding to therapy. No one recommended taking either J.S. or L.S. out of the Waldorf School and moving them to the Rawson-Saunders School.

On appeal, in addition to challenging the district court's ultimate modification relief, Stritzinger complains that certain pretrial actions prevented him from presenting testimony at trial about "his decision making capabilities from an independent viewpoint" and resulted in Wright's presenting evidence obtained in violation of prior court orders. He asserts that the district court abused its discretion by: (1) allowing Wright to present additional experts at trial that Stritzinger alleges she engaged in violation of prior orders prohibiting her from engaging additional experts, (2) allowing a different doctor to administer J.S's pretrial dyslexia screening than the one initially appointed, and (3) excluding three expert witnesses he sought to present.

Stritzinger's first complaint is based on the September 1, 2006 district court order enjoining both parties from "[r]etaining any new therapists, counselors, consultants or forensic experts for the children unless by agreement or Court order." But on June 5, 2009, the district court temporarily lifted the injunction because "this case is set for final trial, including trial on [Stritzinger's] counter-petition alleging learning and educational disorders of the children." The court specifically ordered that Wright "may engage new consultants and forensic experts on the following: dyslexia, dysgraphia, dyscardia, and all disorders, delays, or impairments of any kind that affect the ability to learn, including but not limited to visual-motor, specific language impairment, and other alleged physical or mental disorders; Section 504 of the Rehabilitation Act of 1973 and related statutes and regulations; educational matters and schools generally, including but not limited to mental retardation; and accounting experts related to child support." Stritzinger

15

asserts that the second order allowed Wright to have her experts review previous data collected on the children but not to have the experts perform any additional evaluations of them. Contrary to Stritzinger's assertion, the order contains no such limiting language.[9] In short, Stritzinger's complaint is without merit.

As for Stritzinger's complaint that the district court allowed a different doctor to administer J.S's pretrial dyslexia screening, the district court made this substitution on Wright's motion without opposition from Stritzinger. In addition, at trial he admitted that he "did not object to [the new doctor's appointment] because I felt like the Court and myself needed that information to make decisions." Stritzinger has waived this complaint. *See* Tex. R. App. P. 33.1.

Stritzinger also complains that the district court excluded three of his experts for failure to disclose the information required under rule 194. *See* Tex. R. Civ. P. 194(f). Wright served Stritzinger with a request for disclosure on May 13, 2009, asking him to disclose the following information for each of his testifying experts:

(1)     the expert's name, address, and telephone number;

(2)     the subject matter on which the expert will testify;

(3)     the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;

---

[9] Stritzinger similarly complains of the admission of various reports and other evidence generated by experts purportedly retained in violation of both orders. Stritzinger did not object to the admission of these reports at trial and thus waived his complaint on appeal. *See* Tex. R. App. P. 33.1; *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007) (per curiam).

>   (4)     if the expert is retained by, employed by, or otherwise subject to the control of the responding party:
>
>>   (A)     all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and
>>
>>   (B)     the expert's current resume and bibliography . . . .

Tex. R. Civ. P. 194.2(f). Under a scheduling order, Stritzinger had until July 10, 2009, to provide his list of experts and the information and documents required by Rule 194.2(f). Stritzinger served a response to Wright's request for disclosure on June 21, 2009. Stritzinger identified Drs. Nussbaum, Dalton, and Sekel as testifying experts. For both Nussbaum and Dalton, Stritzinger provided their identifying information (name, address, and phone number) and the subject matter of their testimony and stated that "Dr. Dalton is not a retained testifying expert," but he neither provided any information about the substance of their opinions and the basis for them nor produced any responsive documents. For Sekel, Stritzinger provided her name, address, and phone number and the subject matter of her testimony, but regarding the substance of her opinions, he responded that "Dr. Sekel has not prepared a report. Previous [l]etters and documents from Dr. Sekel in regards to [J.S.] have already been provided to Katherine Wright[,]" and that "Dr. Sekel is not a retained testifying expert." Stritzinger had stated in his response, however, that the subject matter of Sekel's testimony would concern not just J.S., but all three children—"H.S.'s performance at Rawson-Saunders school, [Sekel's] contact with the parties, and her thoughts on [J.S.] & [L.S.'s] reports," as well as "long term needs of dyslexic children" and "relevant state and federal laws regarding children with special needs."

17

Wright moved to exclude the proposed expert testimony of these three witnesses under rule 193.6, arguing that Stritzinger had not timely disclosed the information about the experts and their opinions required by the discovery rules. *See* Tex. R. Civ. P. 193.6. The motions were set for hearing on August 7, 2009. Wright notified Stritzinger of the hearing, but Stritzinger did not appear or seek a continuance. At the hearing, Wright's counsel presented Wright's request for disclosure and Stritzinger's discovery responses as evidence that Stritzinger failed to timely provide the information about his proposed experts as required by the rules. Wright's counsel also presented testimony about unsuccessful additional efforts to obtain the written opinions of Sekel. The district court granted Wright's motion and excluded Nussbaum, Dalton, and Sekel.

A party must respond to written discovery, including requests for disclosure under rule 194, in writing within the time provided by court order or the discovery rules. Tex. R. Civ. P. 193.1. Rule 193.6(a) establishes that the penalty for failure to provide complete responses is exclusion of the evidence. Tex. R. Civ. P. 193.6(a). The rule is mandatory, and the penalty is automatic, unless the party offering the undisclosed evidence demonstrates good cause or lack of unfair surprise or prejudice, and that showing is supported by the record. Tex. R. Civ. P. 193.6(b); *VingCard A.S. v. Merrimac Hospitality Sys., Inc.*, 59 S.W.3d 847, 856 (Tex. App.—Fort Worth 2001, pet. denied). Stritzinger contends that Wright's own discovery responses demonstrated that she already knew what the experts' opinions were, suggesting that she was not unfairly surprised or prejudiced. But Wright's discovery responses are not part of the appellate record. When the appellant fails to include particular relevant documents in the appellate record, "[w]e must presume the missing documents would sustain the trial court's ruling." *Till v. Thomas*, 10 S.W.3d 730, 734

18

(Tex. App.—Houston [1st Dist.] 1999, no pet.) (citing *University of Texas at Austin v. Hinton*, 822 S.W.2d 197, 202 (Tex. App.—Austin 1991, no writ).[10] In addition, Stritzinger did not appear at the hearing and presented no evidence of lack of surprise or prejudice. The district court did not abuse its discretion in excluding Stritzinger's experts.[11]

As for the evidence that was presented at trial, it amply supported the district court's conclusion that there had been a material and substantial change in circumstances and that awarding sole conservatorship to Wright was in the children's best interest. *See, e.g.*, *In re C.C.J.*, 244 S.W.3d 911, 924 (Tex. App.—Dallas 2008, no pet.) (holding evidence of parties' inability to reach shared decisions supported trial court's ruling that it was in children's best interest for mother to have final decision-making authority for educational matters). We conclude that there was legally and factually sufficient evidence to support the district court's decision to award sole managing conservatorship to Wright, and the district court did not abuse its discretion by so deciding. We overrule Stritzinger's complaints challenging the conservatorship modification.

---

[10] In his brief, Stritzinger cites an "Appendix H—Discovery Responses," which was not filed with the brief. Even if "Appendix H" had been filed, we note that we may not consider documents attached as exhibits to appellate briefs that do not appear in the record. *See Till v. Thomas*, 10 S.W.3d 730, 733 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

[11] Stritzinger also argues that the district court purportedly acknowledged on the record that "pretrial violations had occurred," but nevertheless refused to consider his motion to reconsider pretrial issues because it was not timely filed. As Wright points out, a review of the reporter's record shows that Stritzinger has taken the district court's statement out of context. The district court's statement "quickly scanning, it appeared to me that's true" is referring to Wright's counsel's statement that the court had found that Stritzinger's motion for damages failed to state a claim upon which relief could be granted. In other words, the court agreed that the motion failed to state a claim, not that the motion was true. Thus, it provides no support for Stritzinger's argument that the court erred by excluding the experts' testimony.

19

**CHILD SUPPORT**

In addition to seeking modification of conservatorship, Wright sought an increase in child support from $1,500 to $3,525 per month. The district court increased the monthly amount of child support due to Wright from Stritzinger, augmenting the presumptive amount of $2,250 with an additional $1,350 in above-guideline support based on the proven needs of the children, for a total monthly payment of $3,600.

Stritzinger challenges the district court's award of above-guideline child support, contending that his income has increased less than Wright's since their divorce became final, that the award increases her income to twice the amount of his, that her parents pay for some of her expenses and the children's tuition, that the court improperly included Wright's payments to her experts obtained in violation of the September 2006 order as uninsured medical expenses in its calculation of the award, and that he was unable to establish his income with documentation because of "objections to discovery materials." We will consider Stritzinger's challenge as an argument that the court abused its discretion because there was legally and factually insufficient evidence to support the award.

As with the conservatorship modification, the family code provides that the trial court may modify a child support order if "the circumstances of the child or a person affected by the order have materially and substantially changed." Tex. Fam. Code Ann. § 156.401(a)(1) (West 2008). The court's primary consideration is the best interest of the child when determining the issue of child support. *See id.* §§ 156.401, .402 (West 2008); *Hollifield v. Hollifield*, 925 S.W.2d 153, 155 (Tex. App.—Austin 1996, no writ). When considering whether application of the child support

guidelines is just and appropriate, the court may consider the child support guidelines under chapter 154 and other relevant evidence in addition to the factors listed in the guidelines. Tex. Fam. Code Ann. § 156.402; *see also id.* § 154.123 (West 2008); *Hollifield*, 925 S.W.2d at 155. Some of the factors that are relevant here include: (1) the age and needs of the child; (2) the parent's ability to contribute to the child's support; (3) financial resources available for the child's support; (4) whether the obligor has an automobile, housing, or other benefits furnished by his employer; and (5) "special or extraordinary educational, health care, or other expenses" of the child. Tex. Fam. Code Ann. § 154.123(b).

A trial court's order modifying a child support award will not be disturbed on appeal unless a clear abuse of discretion appears from the record as a whole. *Hollifield*, 925 S.W.2d at 155. As with the conservatorship modification, no abuse of discretion occurs as long as some evidence of a substantive and probative character exists to support the trial court's decision. *See Burney v. Burney*, 225 S.W.3d 208, 214 (Tex. App.—El Paso 2006, no pet.). We employ the same hybrid analysis in which the abuse-of-discretion standard overlaps with the traditional sufficiency standard of review, and legal and factual insufficiency are not independent grounds of error but are relevant factors in our assessment of whether the district court abused its discretion. *See id.*

Stritzinger testified that his annual gross income was approximately $208,000. Wright testified that her annual gross income was $100,000, and she presented evidence that her monthly net resources were $6,072 and her monthly expenses for herself and the children totaled

$16,479.[12] Wright testified that her monthly expenses had changed since the 2005 divorce decree primarily because the children's need for therapy and tutoring of various kinds had increased. The record reflects that after the close of evidence, the district court noted that it would grant the request for an increase in child support to guideline, but that it wanted to hear further argument on the above-guideline request based on the evidence that had been presented of the children's special needs. The district court heard argument off the record on the last day of trial, after which it stated on the record its initial conclusion that it would order at least $2,250 of guideline-based support, based on guideline income for Stritzinger of $200,000. The district court indicated that it would consider increasing support to address the proven needs of the children, but it needed more information about what amount of the needs was covered by insurance. At a later hearing on September 4, 2009, the district court again heard argument about its remaining questions, then stated that it would order child support at $3,600 per month based on Stritzinger's income and the children's proven needs of $8,138.

In its findings of fact, the district court found that the application of the guidelines would be unjust and inappropriate. The court found that Wright's monthly net resources were $6,072 and that Stritzinger's monthly net resources were $12,000. It found that the percentage to

_____

[12] These expenses were itemized into 32 different categories and included the children's monthly expenses of $1,850 for therapy, $2,567 for school tuition (although Wright's parents had paid their tuition for the 2009-10 school year as a gift), and $750 for tutoring. Wright also testified about certain specific monthly expenses, including J.S.'s tutoring at $700, H.S.'s academic language therapy at $700, L.S.'s occupational therapy at $800, vision therapy for all three children at $2,100, swimming lessons for all three children at approximately $300 per child, and tennis lessons for all three children at $55 per child. She had also spent at least $12,625 in unreimbursed medical expenses over the eighteen-month period before trial.

be applied to the first $7,500 of Stritzinger's net resources under the statutory guideline was 30%, resulting in a guideline amount total of $2,250. The court made findings regarding its reasons for awarding above-guideline support:

15. The specific reasons that the amount of child support per month ordered by the court varies from the amount computed by applying the percentage guidelines under Section 154.125, are as follows:

   a. The obligor's annual gross income is $200,000.00, which is double the obligee's annual gross income.

   b. The obligee's annual gross income is $100,000.00.

   c. The proven needs of the children are $8,855.00 per month.

   d. The presumptive award of child support under Section 154.125(a), as applied to the first $7,500 of monthly net resources, is $2,250.00.

   e. After the presumptive award is subtracted from the proven needs of the children, the additional needs of the children are $6,605.00.

   f. The additional needs were allocated $1,350.00 to the obligor and $5,255.00 to the obligee, for a total of $3,600.00 per month in child support to be paid by the obligor.

   g. The child support amount of $3,600 does not equal or exceed 100 percent of the proven needs of the children.

   h. The evidence rebuts the presumption that the application of the guidelines is in the best interest of the children and justifies a variance from the guidelines, as follows:

      i. The children have special needs, including reading and language impairments, tutoring, academic language therapy, occupational therapy, dental care, psychotherapy, optometry, and allergy and dietary restrictions.

23

ii. The children's needs include music lessons as part of their school curriculum, extracurricular activities and sports, transportation costs, and school supplies and books.

iii. The obligor has housing, an automobile, airfare, and other benefits furnished by his employer.

Accordingly, the court found that additional amounts of child support were required, based on the children's demonstrated needs, and that the amount awarded was in the best interest of the children.

There was ample evidence that the children have developed special needs since the original award of child support, including various medical and dental appointments, different types of therapy, tutoring, and activities, and that the amount of those needs is at least $8,855. Although Stritzinger's income is double the amount of Wright's income, the court only allocated 23% of the additional proven needs to him, resulting in his total support payment being less than 50% of the amount of total proven needs (i.e., $3,600 of $8,855). The district court did not abuse its discretion because it had sufficient evidence of a substantive and probative character before it to support its decision.

**ADDITIONAL CHILD SUPPORT:  MEDICAL SUPPORT ARREARAGES**

The district court ordered Stritzinger to pay $1,784.80 in unpaid health insurance reimbursement and $2,775.50 in unpaid uninsured medical expenses as additional child support to Wright. Stritzinger challenges the award because he contends Wright improperly included certain amounts for her experts in the amounts she submitted to the court and that the evidence showed Wright owed him money for certain medical expenses.

24

Wright submitted evidence of medical and therapy claims that she submitted to the children's insurer for reimbursement between February 26 and July 17, 2009. The insurer sent reimbursement checks to Stritzinger. Wright testified that he had never provided any reimbursement to her since the divorce became final. The total amount of the expenses for which Wright sought reimbursement at trial was $1,798.

Wright also presented evidence that she had spent $12,625.18 on the children's uninsured medical expenses in the last year and a half. From that amount, she deducted the children's dental expenses of $2,543 and $4,531.25 paid to Dr. Henton, one of her experts and the doctor who performed J.S.'s dyslexia evaluation, leaving a total of $5,550.93. Wright sought reimbursement for half of these uninsured expenses, a total of $2,775.47.

We conclude that the district court had enough legally and factually sufficient evidence to support its decision, and it did not abuse its discretion by awarding this additional child support to Wright.

## PARTIES' MOTIONS FOR ENFORCEMENT

**Violations alleged by Wright**

At trial, the court heard Wright's motion for enforcement, in which she contended that Stritzinger had violated various court orders and temporary orders. The district court held that Stritzinger was civilly liable for eleven violations of the Agreed Final Decree of Divorce, the 2006 Order in Suit to Modify Parent-Child Relationship, and the 2007 Agreed Order in Suit to Modify Parent-Child Relationship. Stritzinger challenges seven of the eleven violations.

25

We review a trial court's order granting or denying the relief requested in a motion for enforcement for an abuse of discretion. *In re A.C.B.*, 302 S.W.3d 560, 563 (Tex. App.—Amarillo 2009, no pet.). We will uphold the trial court's findings as long as some evidence of a substantive and probative character exists to support its decision. *See In re L.L.*, — S.W.3d —, 2010 WL 5385376, at *2 (Tex. App.—San Antonio, Dec. 29, 2010, no pet. h.). Sufficiency of the evidence is a relevant factor in our assessment, but not an independent ground of error. *Id.*

Stritzinger contends that his testimony at the June 8, 2009 hearing showed that violations Wright alleged relating to his refusal to attend a conference with Dr. McMillan and cooperate with her recommendations about H.S. were not true and that he did not miss appointments with McMillan. He testified that he told McMillan's office that he would talk about H.S.'s school placement only if Nussbaum (who had not recently evaluated H.S.) also attended the meeting, but that McMillan's office said that was not acceptable. Among other evidence in the record, Dr. McMillan testified about her office's efforts to schedule a joint parent conference to discuss H.S. with Stritzinger in April 2009 and his refusal to attend if there was going to be any discussion about schools for H.S. This is sufficient evidence to support the district court's finding these violations.

Stritzinger also contends that the district court erred by concluding that he violated the November 2007 agreed order by refusing to take L.S. to her occupational therapy appointments that were recommended by McMillan and by refusing to allow J.S. to receive tutoring as recommended by his teacher and McMillan. Stritzinger argues that Wright had hired the occupational therapist and the tutor in violation of the September 2006 order and thus he could not be in violation. But the court heard evidence that Wright took L.S. to an occupational therapist specifically recommended

26

by her teacher only after consultation with McMillan and that the divorce decree as well as other orders required Stritzinger to follow McMillan's recommendations. The court also heard evidence about the parties' May 2007 rule 11 agreement, which provided that they would follow the recommendation of J.S.'s teacher if he needed help outside of school and they would accept the recommendation of either McMillan or J.S.'s teacher, and both had recommended the tutor. Stritzinger does not deny that he failed to take L.S. to her appointments or to allow J.S. to be tutored. The district court had sufficient evidence before it to determine that Stritzinger committed these violations.

Stritzinger also challenges the district court's finding that he committed an alleged violation concerning his refusal to take J.S. to a scheduled dentist appointment without obtaining Wright's consent to miss the scheduled dental appointment. Stritzinger argues only that he had not been consulted about the date and time for the appointment and that he rescheduled it for three days later, but does not deny that he did not take J.S. to the appointment. Wright had alleged that the purpose of the missed appointment was to have J.S.'s teeth cleaned to reduce the likelihood of infection before a scheduled double extraction. She presented evidence that J.S. had cavities in six teeth that needed filling, that Stritzinger opposed having the recommended work done, and that two of his teeth became abscessed and ultimately had to be pulled. The district court had sufficient evidence before it to conclude that Stritzinger violated the November 2007 order, which stated that "[a]ppointments with professionals referenced herein shall not be changed without the consent of both parents, who shall cooperate with such professionals' recommendations and treatment." That

order modified the final divorce decree, which referred to dental professionals in the section concerning the split of health care expenses.

Stritzinger also contends that the district court erred by finding that he violated the November 2007 order and breached the settlement agreement it contained "by filing a motion to modify for reasons related to whether the Austin Waldorf School is a proper school for [J.S.] and [L.S.], which was filed before the end of [J.S.'s] fifth grade school year and the end of [L.S.'s] third grade school year." Stritzinger asserts that he could not have been in violation of the agreement or the order because Judge Triana-Doyal had ordered the parties to enroll the children in the Rawson-Saunders School in advance of the court's final determination at the August 2009 trial. Contrary to Stritzinger's assertion, the district court did not find he was in breach of the agreement and the order for enrolling the children at Rawson-Saunders; instead, it found a violation because he asserted in his live petition at the time of trial that the Waldorf School was not a proper school for J.S. and L.S. before the agreed-upon time when such a motion could be filed. The district court had sufficient evidence upon which to base its decision that Stritzinger breached the agreement and order.

The district court was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The court had some evidence of a substantive and probative character before it, and thus it did not abuse its discretion by finding that Stritzinger committed these violations. *See In re L.L.*, — S.W.3d —, 2010 WL 5385376, at *2-3.

28

**Violations alleged by Stritzinger**

The district court also heard Stritzinger's motion for enforcement in which he asserted twelve violations by Wright of the final divorce decree and other orders. The court found that Wright violated the divorce decree by failing to take J.S. to soccer practice, but that "due to mitigating circumstances this violation, as well as all other violations alleged by [Stritzinger] against [Wright] are DENIED." On appeal, Stritzinger urges that the court erred by finding no violations, and he re-urges most of his alleged violations by Wright. Most of those violations concern disparaging remarks allegedly made by Wright to the children, and the court heard testimony from Wright contradicting the allegations. Similarly, as explained above, after testimony from both sides, the district court determined that Wright's retention of a new occupational therapist and a new reading tutor, as well as her retention of pediatric dentists and allergists were not violations of the September 2006 order enjoining the parties from hiring new therapists. The district court also heard evidence rebutting Stritzinger's allegation that Wright failed to pay her share of uninsured medical expenses for some of the children's therapy. Wright testified that Stritzinger never provided her with receipts as required, but that she would have paid if he had sent receipts. As for Stritzinger's allegation that she failed to take the children to their extracurricular activities, Wright testified that the soccer team was in an area a half an hour away, which it "made it very challenging for practices and games," and at a time that made it impossible to get the children to bed on time, which supports the court's finding of mitigating circumstances for missing soccer practice. Stritzinger did not conclusively prove that Wright committed the violations, nor has he shown that the court's finding is clearly wrong and unjust. We defer to the court's discretion, as long as some

29

evidence of a substantive and probative character exists, because the court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See In re L.L.*, — S.W.3d —, 2010 WL 5385376, at *2. The court had sufficient evidence before it upon which to exercise its discretion, and we conclude that it did not err in its application of that discretion. *See Zeifman*, 212 S.W.3d at 588.

## ATTORNEY'S FEES AWARDED AS CHILD SUPPORT

The district court awarded a judgment in the total amount of $95,030 to Wright's trial counsel for attorney's fees, expenses, and costs, including $15,575 awarded as child support. The award also included $49,455 for breach of contract, based on Stritzinger's breaching the November 2007 settlement agreement and agreed order by filing his motion to modify seeking to change J.S.'s and L.S.'s school placement before the agreed-upon time, and $30,000 for enforcement violations. We review the court's award of attorney's fees in a suit affecting the parent-child relationship for an abuse of discretion. *See* Tex. Fam. Code Ann. §§ 106.001, .002 (West 2008); *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996).

Stritzinger focuses his challenge to the latter two fee awards on his contentions that he was not guilty of breach of contract or the enforcement violations. As discussed above, the district court did not abuse its discretion by finding that he had committed the enforcement violations or breached the settlement agreement and agreed order. Wright's trial counsel presented evidence that he had sent a demand letter to Stritzinger on July 2, 2009, about Stritzinger's breach of contract, as required by section 38.001 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001(8), .002 (West 2008). Wright's trial counsel testified that of the $249,000

Wright incurred in fees, $49,450 was incurred for work on the breach-of-contract claim, and $30,000 was incurred for work on the enforcement violations. The district court had sufficient evidence upon which to base these fee awards.

As for the remaining $15,575, Stritzinger argues that the child support issues had been resolved at a May 2009 hearing, less than 30 days after those issues were presented to him. At the August 2009 trial, however, the district court found Stritzinger had violated the divorce decree by failing to make full payments of child support, in addition to the medical support arrearages discussed above. The court based its award of $15,575 that was awarded as child support on Wright's trial counsel's testimony that Wright incurred those fees attempting to enforce her claims for child support and medical support. This evidence was sufficient, and the district court did not abuse its discretion by making this fee award.

### SANCTIONS AWARD

Stritzinger contends that the district court erred by sanctioning him for filing certain post-trial motions.[13] We review a trial court's order imposing sanctions under rule 13 for an abuse of discretion. *See* Tex. R. Civ. P. 13; *Parker v. Walton*, 233 S.W.3d 535, 539 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The district court first sanctioned Stritzinger $500 on September 4, 2009, for filing a post-trial motion for damages that sought $800,000 in damages from Wright and failed to state a claim upon which relief could be granted. The court held that the motion was frivolous

---

[13] In addition to the sanctions described above, Stritzinger complains of sanctions resulting from a January 27, 2010 hearing. He did not include that order in his notice of appeal, and it is not properly before us. *See* Tex. R. App. P. 25.1.

and awarded Wright an "essentially nominal" sanction of $500, because no sanctions had previously been awarded. The court warned Stritzinger that if he continued to file "documents like that [frivolous and harassing], the Court will have to consider progressive sanctions." The district court next sanctioned Stritzinger $2,500 on December 22, 2009, for filing a frivolous motion for further temporary orders. In this motion, despite Wright's appointment as sole managing conservator with the exclusive right to make decisions concerning the children's education, Stritzinger sought an order compelling Wright to participate in the Child Find process for the children provided for under federal and state law to attempt to obtain educational services that might be available to them if they enrolled in public school.

In both instances, Stritzinger argues that the district court should not have sanctioned him because his motions were meritorious. Regarding the September 4 award of sanctions, Stritzinger relies on the same out-of-context statement by the court that "it appeared to me that's true" discussed above in the expert-exclusion section. The district court was agreeing that the motion failed to state a claim, not agreeing with Stritzinger about the truth of his allegations.

Regarding the December 22 award, Stritzinger contends that state and federal law providing for testing of children with special educational needs trumps the district court's conservatorship decision. We disagree. Trial courts have the authority and power to name one parent as sole managing conservator with the exclusive right to make educational decisions for the children. Tex. Fam. Code Ann. § 156.101. Stritzinger also argues that the motion for temporary orders should have been heard by 345th District Court of Travis County, which conducted the August 2009 trial. As Wright notes, however, Stritzinger failed to object at the hearing to having

32

the 98th District Court of Travis County hear the motion, and in fact, stated on the record that he would go forward with his motion. Stritzinger waived any error on this ground by failing to object below. *See* Tex. R. App. P. 33.1.

The record reflects that Stritzinger filed his first motion almost immediately after the conclusion of a five-day trial, that the motion raised issues that had just been litigated, and that his second motion similarly raised already litigated issues. The district court did not abuse its discretion by awarding sanctions or by awarding progressively larger sanctions.

## FORM OF THE FINAL ORDER

Stritzinger challenges the form of the final order entered by the district court on January 6, 2010. He contends that the court erred by including certain types of relief in the order that had not been presented to the court at trial and were not in Wright's pleadings. He complains about: modification of the uninsured medical expenses provision, date-specific medical information exchanges, progressive sanctions, progressive enforcement awards,[14] penalties for seeking appellate relief, and changes to injunctive relief. He asserts that these "new provisions . . . had severe punitive effects" on him.

As Wright points out, she raised the issues related to uninsured medical expenses, appellate attorney's fees, and changes to injunctive relief in her pleadings, her proposed disposition of issues, and/or at trial. Wright also raised in her pleadings and at trial issues related to exchanging

---

[14] There is no provision for progressive enforcement awards in the final order.

33

information about the children's health insurance. In addition, the provisions in the January 6, 2010 final order are the standard health insurance provisions provided for by statute.

As discussed above, Wright moved for progressive sanctions based on Stritzinger's post-trial frivolous filings. The district court has inherent power to sanction a litigant for filing frivolous pleadings. *See* Tex. R. Civ. P. 13.

We conclude that the district court did not err by including these forms of relief in its final order.

## CONCLUSION

Having overruled Stritzinger's complaints on appeal, we affirm the district court's final order.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: February 23, 2011

34